JENKINS et al. v. BITGOOD, Formerly Acting Collector of Internal Revenue.*

No. 3881.

District Court, D. Connecticut.

Nov. 10, 1937.

Curtiss K. Thompson and John H. Weir, both of New Haven, Conn., for plaintiffs.

*Opinion adhered to on rehearing 22 F.Supp. 16.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Maurice J. Mahoney, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Dist. Atty., and Louis Y. Gaberman, Asst. U. S. Dist. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge.

This is an action to recover an alleged overpayment of income taxes for the year 1932. The plaintiffs' decedent, in 1931 and 1932, owned 69 shares of the capital stock of the Merchants National Bank of New Haven, and was a director and depositor of said bank. In the summer of 1931, an examination by a national bank examiner disclosed that the capital of. the bank was impaired, and the bank examiner insisted as one of the alternatives that the impairment of capital be made .up by the directors. As a result, the directors of the bank entered into an agreement with each other to purchase certain securities held by the bank at the value at which those securities were carried on the books of the bank, which represented cost ,to the bank. The decedent, Leonard Jenkins, became a party to the agreement to the extent of $25,000. The bonds acquired by him as a result of this purchase, which occurred September 21, 1931, pursuant to the directors' agreement of September 17, 1931, had on that day an actual value of $5,550.

The decedent gave his demand note to the bank for $25,000 on September 21, 1931. The note was amply secured. In 1932 the bank was taken over by the First National Bank & Trust Company of New Haven, and as a result the investment of 'the stockholders in the Merchants National Bank became worthless.

The decedent deducted from gross income for 1932 the sum of $19,450, being the difference between the $25,000 note given in payment for the bonds and the $5,550, the value of the bonds at the time the note was given. The decedent died in 1934, and, after his death, his executors paid the note. The Commissioner of Internal Revenue disallowed the deduction and assessed an additional tax of $10,020.74, which plaintiffs paid to defendant on January 28, 1935, $9,023.60 of which was due to the disallowance of the deduction and the balance to other adjustments not involved in this suit.

It is conceded that the decedent made his returns for 1932 on the cash receipts and disbursements basis.

The plaintiffs sue to recover the amount paid as a result of the disallowance of the deduction of $19,450, after refund claim duly filed was denied by the Commissioner.

The theory of the action is that the decedent sustained a deductible loss of $19,450 at the time the Merchants National Bank & Trust Company was taken over by the First National Bank & Trust Company in 1932, for at that time the Merchants Bank stock became worthless. The plaintiffs say that the actualities of the situation were that the purchase of bonds worth only $5,550 for $25,000 was a contribution of the excess to the bank, and was paid to protect the decedent's stock investment therein, and that this contribution became a loss when the bank stock became worthless.

The government says that no loss could have been sustained until the note was paid, since the decedent was on the cash receipts and disbursements basis, and relies on Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911, and subsequent cases following the rule of that case; also that no loss was sustained because decedent did not sell or dispose of the bonds.

The plaintiffs distinguish on the ground that in the instant case the note was a demand note amply secured, and was therefore the equivalent of cash. The transaction resulted in a severe hardship for the plaintiffs' decedent, in 1932, when he learned that his sacrifice had been for nought.

Whatever cogent reasons may have induced the decedent to pay an excessive price to the bank for the bonds, the fact remains that this is what he did. It appears, however, that there was ample legal consideration for the agreement to pay such price, not only because he acquired bonds having a substantial value, but because of the mutual promises of the directors to make similar purchases from the bank at prices far above the market value. No question has been raised as to the legal adequacy of the consideration.

The motive of improving the bank's condition is not sufficient to change the character of the transaction, or to change any portion of the $25,000 agreed to be paid from purchase price of bonds to a capital contribution to the bank. The $25,000 was undoubtedly an investment in bonds.

There is no allegation that the decedent sold or disposed of the bonds in 1932, or that they became worthless in that year. There is nothing upon which to predicate a deductible loss in 1932.

For the above reasons, it is unnecessary to consider the effect of the rule in the case of Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911.

Judgment must be entered for the defendant. Submit order accordingly, properly consented to as to form. The findings of fact and conclusions of law are set forth above, and signed requests have been signed and filed, and are made part hereof.